UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELBORN FREEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES, et al.,<br><br>    Defendants. | Case No. 13-cv-02421-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 43, 65, 66 |

Pro se plaintiffs Welborn Freeman and Deborah Freeman were harmed when Mr. Freeman suffered complications from an aortic valve repair performed by doctors at the San Francisco Veterans Administration Medical Center. The questions I must decide on defendants' motion to dismiss are whether the Court has subject matter jurisdiction over Mrs. Freeman's FTCA claims, whether the Freemans adequately state FTCA and Unruh Act claims, and whether sovereign immunity bars the Freemans' *Bivens* claim against the United States. For the reasons below, the motion to dismiss is GRANTED, in part with leave to amend and in part with prejudice. The Freemans' request for a default judgment is DENIED.

**FACTUAL BACKGROUND**

On January 6, 2014, Welborn Freeman filed a First Amended Complaint ("FAC"), joined by his wife Deborah Freeman, against the United States, San Francisco Veterans Administration Medical Center ("VA Medical Center"), Does 1-100, and Dr. Mark Ratcliffe, Dr. Errol Bush, Dr. John Lee, Dr. Carlos Corvera, Dr. Howard, and Paula Price (collectively, "defendants").[1] Dkt.

---

[1] The Freemans request that I render default judgment against the named individual defendants who the Freemans had not yet properly served. Opp'n 5; Plaintiffs' Motion to Amend or Leave to Include Missing Pages, Dkt. No. 65. I cannot render judgment against individuals who have not been served, and therefore DENY this request.

1 No. 42. The Freemans assert claims for negligence, medical malpractice negligence, intentional
2 infliction of emotional distress, loss of consortium, violations of their First and Fifth Amendment
3 rights, and race discrimination in violation of California's Unruh Act, California Civil Code § 51.
4 FAC at 1. On January 21, 2014, the United States moved to dismiss the FAC. Dkt. No. 43. As of
5 the filing of the parties' briefs, the named individual defendants were not yet served and did not
6 join the United States' motion.

7 This action stems from harm resulting from complications of Mr. Freeman's aortic valve
8 repair at the VA Medical Center. FAC at 3. Dr. Errol Bush informed Mr. Freeman that he would
9 die without the procedure, but allegedly did not warn of the possible surgery risks. *Id.* at ¶ 2. Dr.
10 Ratcliffe, Dr. Bush, Dr. Lee, Paula Price, and Does 1-10 performed the aortic valve surgery on
11 November 12, 2010. *Id.* at 3 ¶ 5. For six days after the surgery, Mr. Freeman remained
12 hospitalized in excruciating pain with Mrs. Freeman by his side. *Id*. The Freemans informed Dr.
13 Bush, Dr. Lee, Paula Price, and Does 1-10 about this pain. *Id*. At some point post-surgery while
14 Mr. Freeman was on a gurney, the head nurse said "What is he doing here?" and "implied that an
15 African American didn't belong in her hospital unit." FAC at 6. The head nurse loudly shouted at
16 Mr. Freeman to "Shut up, shut up, shut up. Put him by the room by the door's exit. I am going to
17 throw you out of here!" FAC at 7.

18 The Freemans allege that during the aortic valve surgery, "surgical clamps were used to
19 cut-off the blood flow to [Mr. Freeman's] colon" and "due to the lack of blood circulation, part of
20 the colon 'died.'" *Id.* They also allege that Mr. Freeman's "ileum was cut during heart surgery."
21 *Id*. at 6 ¶ 1. On November 18, 2010, Mr. Freeman "began to convulse [and] went into toxic
22 shock" and had additional surgery "to cut-out the portion of the colon that 'died.'" *Id.* at ¶ 6.
23 After this surgery, Mr. Freeman wore a "bag" for six months until his colon could be reconnected.
24 Opp'n 60. Mr. Freeman went to the Oakland VA clinic for post-surgery treatment where the
25 Freemans allege that the physical therapist was racist, and that "[w]hite veterans were allowed to
26 use the equipment but Mr. Freeman was advised to 'walk around Lake Merritt' using his walker,
27 due to his limited mobility." FAC at 16-17.

28

**PROCEDURAL BACKGROUND**

Mr. Freeman filed this action on May 29, 2013. Dkt. No. 1. On July 29, 2013, the United States moved to dismiss Mr. Freeman's complaint. Dkt. No. 5. On November 11, 2013, I granted the motion in part, dismissing with prejudice Mr. Freeman's claims for constitutional violations against the United States, negligence per se, negligent infliction of emotional distress, loss of consortium/society, misrepresentation/deceit/fraud, and breach of contract. Dkt. No. 34. I gave Mr. Freeman leave to amend the following claims: *Bivens* action for constitutional violations against specifically named individual defendants; intentional infliction of emotional distress; and violations of Section 51 of the Unruh Act. Dkt. No. 34. The United States did not challenge plaintiff's claim for negligence, and that claim remained in the case. Dkt. No. 34.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if the court does not have jurisdiction over it. In reviewing a "facial" jurisdictional attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

3

court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences*." In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

## DISCUSSION

The United States moves to dismiss and asserts that: (i) Mrs. Freeman's FTCA claims fail for lack of subject matter jurisdiction; (ii) the United States is the only proper party defendant for FTCA claims; (iii) sovereign immunity bars the Freemans' *Bivens* claim; and (iv) the Freemans fail to state FTCA claims and claim for violations of California's Unruh Act. I address each argument in turn.

### I. FTCA CLAIMS

**A. Jurisdiction over Deborah Freeman's Claims**

The United States argues that the Court lacks subject matter jurisdiction over Mrs.

1  Freeman's FTCA claims because she failed to exhaust her administrative remedies.  Def.'s Mot. 8.
2  The FTCA limits the jurisdiction of federal courts to entertain actions for damages against the
3  United States.  28 U.S.C. § 2675(a); *Valadez-Lopez v. Chertoff*, 656 F.3d 851 (9th Cir. 2011).
4  Before a claimant can assert an FTCA cause of action in federal court, a claimant must first
5  exhaust administrative remedies.  28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113
6  (1993).  To exhaust administrative remedies, a plaintiff must present a claim to the appropriate
7  agency and either the claim is denied in writing or six months pass without any response from the
8  agency.  28 U.S.C. § 2675(a).  Section 2675(a) requires the claimant or the claimant's legal
9  representative to file a claim with "(1) a written statement sufficiently describing the injury to
10  enable the agency to begin its own investigation, and (2) a sum certain damages claim."
11  *Cadwalder v. United States*, 45 F.3d 297, 301 (9th Cir. 1995) (citing *Warren v. United States*
12  *Dept. of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984)).  Section 2401(b) sets
13  a two-year deadline within which a claimant must present a claim "to the appropriate Federal
14  agency . . . after such claim accrues."  28 USCS § 2401(b); *United States v. Kubrick*, 444 U.S.
15  111, 119-21 (1979) (finding that a tort claim against the United States is barred unless it is
16  presented in writing to the appropriate federal agency within two years after such claim accrues);
17  *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013).  The FTCA exhaustion
18  requirement is a "clear statutory command."  *McNeil*, 508 U.S. at 113.

19       The Freemans concede that Mrs. Freeman did not file an administrative claim.[2]  Opp'n 12.
20  However, the Freemans contend that the administrative claim is satisfied because defendants had
21  actual or constructive notice of Mrs. Freeman's claims and because the administrative claim form
22  was ambiguous and confusing.  Opp'n 12.  The Freemans further argue that Mrs. Freeman should
23  be allowed to proceed in this suit so she does not "lose [her] claims because of statute of
24  limitations."  Declaration of Deborah Freeman in Support of Plaintiffs' Motion to Dismiss
25  ("Freeman Decl.") ¶ 3.  Because Mrs. Freeman did not file her own administrative claim within

---

[2] The Freemans filed a motion for leave to file a sur-reply, which I reviewed.  Dkt No. 66.  They argue that Mrs. Freeman filed an administrative claim on February 18, 2014.  This claim is barred by the two-year statute of limitations.  28 U.S.C. § 2401(b).

two years after her claim accrued, she may proceed as a party to this suit only if Mr. Freeman's administrative claim can satisfy the jurisdictional prerequisites for her.

Mr. Freeman's administrative claim did not provide actual or constructive notice of Mrs. Freeman's claims. Mr. Freeman submitted his administrative claim on Standard Form 95, a one page, double-sided form ("Form 95"). Opp'n 60. In completing Form 95, Mr. Freeman indicated his marital status as married, but he did not identify Mrs. Freeman by name, Mrs. Freeman did not sign the form, and Mr. Freeman did not indicate loss of consortium as an injury. *Id*. Mr. Freeman described the nature and extent of his damage as: "1) Negligent infliction of emotional distress, 2) 1 1/2 month in hospital (SF VA Med Ctr.), 3) Due to leakage – permanent stains on/in outfits (designer)." *Id*. Mr. Freeman described the nature and extent of each injury which formed the basis of his claim as:

> Lifestyle change – unable to dress easily without pain. Fear of bag leaking, with strong, foul odors dispelled from "bag." Embarrassing, pungent, humiliating odor in clothes. Subjected to excruciating pain in colon area due to blood cut off–colon (partially dead) removed. Confined to home except medical appointments. (Dead Bowel).

*Id.*

Mr. Freeman's administrative claim did not include Mrs. Freeman and did not give notice of Mrs. Freeman's claims. Even though the merits of Mrs. Freeman's loss of consortium claim derive from Mr. Freeman's claim, Mrs. Freeman is not relieved of the responsibility to assert her own administrative claim. *See Barber*, 118 Fed. Appx. at 278; *Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983) (finding that a claimant's spouse's name on Form 95 does not put the United States on notice of the spouse's loss of consortium claim).

The Freemans' contention that the Form 95 is ambiguous and confusing does not relieve Mrs. Freeman of the responsibility to assert her own administrative claim. Form 95's instructions state that "if the incident involves more than one claimant, each claimant should submit a separate claim form." Opp'n 60. I am unaware of authority that supports the contention that confusion in filing an administrative claim is valid grounds to waive the FTCA's exhaustion requirement. And

there is no authority permitting waiver of the FTCA's exhaustion requirement to allow a claim that would otherwise be barred by statute of limitations. The FTCA's claim requirement is jurisdictional, and it thus "must be strictly adhered to." *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992). Because the FTCA waives sovereign immunity, any such waiver must be "strictly construed in favor of the United States." *Id.*

The Freemans seem to rely on *Locke v. United States*, 351 F. Supp. 185 (D. Haw. 1972), to support their contention that Mr. Freeman's administrative claim satisfies the jurisdictional requirements for Mrs. Freeman. In *Locke*, the husband of a decedent who died in an army hospital brought suit under the FTCA on behalf of himself and his three minor children, alleging negligence by the hospital. 351 F. Supp. at 188. Before initiating the suit, the husband filed an administrative claim with the appropriate federal agency. *Id.* He listed only himself as the claimant and did not reference his minor children. *Id.* Notwithstanding failure to comply with administrative requirements, the court allowed the children's FTCA claims because the father, as the natural guardian of his unmarried minor children, was entitled to bring an action in their stead. *Id.* at 187. The Freemans' reliance on *Locke* is misplaced because the rights of minor children are not at issue here, and it is well settled that a spouse must file a separate administrative claim. *E.g.*, *Barber v. Kone, Inc.*, 118 Fed. Appx. 276, 278 (9th Cir. 2004) (dismissing a spouse's loss of consortium claim for failing to file a separate administrative claim and failing to exhaust administrative remedies); *Johnson*, 704 F.2d at 1442 (9th Cir. 1983) (dismissing a spouse's loss of consortium claim for failing to file a separate administrative claim and failing to exhaust administrative remedies).

Mrs. Freeman did not file her own administrative claim within two years after her claim accrued, and Mr. Freeman's administrative claim cannot satisfy the jurisdictional prerequisites for her claim. Accordingly, Mrs. Freeman's claims for loss of consortium, negligence, medical malpractice, and intentional infliction of emotional distress are DISMISSED WITH PREJUDICE.

### B. The United States is the Only Proper Party Defendant

The Freemans assert claims for negligence, medical malpractice negligence, intentional infliction of emotional distress, and loss of consortium against all defendants. FAC at 1. The

United States argues that the FTCA only authorizes suits against the United States, and I should therefore dismiss the claims against the VA Medical Center and the individual defendants. Def.'s Mot. 8.

It is well settled that the United States is the only proper defendant in an FTCA action. *E.g.*, *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (affirming a district court's dismissal of plaintiff's FTCA claims against the United States Postal Service and the Postmaster General "[b]ecause the United States is the only proper defendant in an FTCA action"); *McAllister v. United States*, No. 11-cv-03858-MEJ, 2013 U.S. Dist. LEXIS 82067, *4. (N.D. Cal. June 10, 2013); *Bishop v. Mazda Motor of Am., Inc.*, No. 12-cv-2557-EMC, 2012 U.S. Dist. LEXIS 15718, at *8-9 (N.D. Cal. Nov. 1, 2012). Accordingly, I DISMISS WITH PREJUDICE the Freemans' FTCA claims against the VA Medical Center, Does 1-100, and Dr. Mark Ratcliffe, Dr. Errol Bush, Dr. John Lee, Dr. Carlos Corvera, Dr. Howard, and Paula Price.

**C. Negligence**

An amended complaint supersedes all prior complaints. *E.g.*, *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989); *Hamilton v. Tyler*, No. 10-cv-1436-RMW, 2010 U.S. Dist. LEXIS 87156, at *8 (N.D. Cal. July 30, 2010). Likewise, under Civil Local Rule 10-1, "an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference." In their FAC, the Freemans do not reallege facts to support a claim for negligence or medical malpractice negligence, even though both are listed on the FAC's caption and "Medical Negligence" appears on the top of the FAC at page 3.[3] The United States concedes that Mr. Freeman's original complaint sufficiently alleged negligence, but argues that the Freemans' negligence and medical malpractice claims should be dismissed because the FAC fails to state these claims. Def.'s Mot. 9 n.3.

In light of Mr. Freeman's pro se status and the liberal pleading standard afforded to pro se litigants, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), if Mr. Freeman

---

[3] Mr. Freeman's original complaint lists only a negligence cause of action, not medical malpractice negligence. The Freemans clarified that they mistakenly omitted their negligence claims from their FAC. Dkt. No. 65.

1    chooses to file a second amended complaint and wishes to preserve claims for negligence and
2    medical malpractice, he must include both claims in his second amended complaint and allege
3    facts for each element. If he fails to do so, I will not consider those causes of action as part of this
4    action.

**D. Intentional Infliction of Emotional Distress ("IIED")**

The United States argues that the Freemans' IIED claim fails because they fail to allege intent or reckless disregard, and the actions complained of do not amount to extreme and outrageous conduct. Def.'s Mot. 11-12. To state an IIED claim, a plaintiff must plead facts showing (i) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (ii) plaintiff suffered severe or extreme emotional distress; and (iii) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). To be "outrageous," the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.*

The Freemans allege that they suffered emotional distress due to the actions of Dr. Ratcliffe, who cut Mr. Freeman's cecum and allegedly violated the standard of care in an aortic valve repair, and of the head nurse, who allegedly mistreated Mr. Freeman while he was in the hospital. While Mr. Freeman was on a gurney post-surgery, the head nurse said, "What is he doing here?" and "implied that an African American didn't belong in her hospital unit." FAC at 6 ¶¶ 3-4. The head nurse loudly shouted at Mr. Freeman to "Shut up, shut up, shut up. Put him by the room by the door's exit. I am going to throw you out of here!" FAC at 7. The head nurse "threatened to put [Mr. Freeman] out of the hospital and . . . put out [Mrs. Freeman] while white wives of veterans remained." Opp'n 8, 10. The Freemans further allege that Mr. Freeman is an "African American male with weak sensitivities susceptible to racial innuendo," and that defendants' acts "were willful, wanton, malicious, and oppressive." FAC at 6, 11. They alternatively allege that defendants "showed reckless disregard for [Mr. Freeman's] weak sensitivities and vulnerable, fragile condition" post-surgery, and that defendants "demonstrated a total reckless disregard of the probability of causing extreme emotional distress by not repairing

9

the cut ileum during heart surgery." FAC at 7, 9. The Freemans allege that they suffered "severe emotional injury" and "felt humiliation, embarrassment and feared death," and in "severe shock after [the head nurse's] outburst (harassment)" towards them. FAC at 7, 10. They allege that Mr. Freeman "has been injured in mind and body as follows: 1. Loose Bowels, 2. Cut Ileum, 3. Excessive Flatulence, 4. Nonexistent sexual life" and that Mr. Freeman could no longer work as a teacher and had to obtain medical treatment. FAC at 10-11.

"Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Pulver v. Avco Fin. Servs.*, 182 Cal. App. 3d 622, 637 (1986). Failure to follow a standard of care, in and of itself, is not extreme and outrageous conduct. *Van Horn v. Hornbeak*, No. 08-cv-1622, 2009 U.S. Dist. LEXIS 16134, at *16 (E.D. Cal. Feb. 18, 2009); *see also Berkley v. Dowds*, 152 Cal. App. 4th 518, 537 (Cal. Ct. App. 2007) ("[M]edical diagnosis and treatment advice will not be considered outrageous unless they are intentionally false and given in bad faith."). Therefore Dr. Ratcliffe's alleged violation of the standard of care in Mr. Freeman's aortic valve repair does not amount to outrageous conduct.

The Freemans' IIED claim against the head nurse also fails because their allegations do not amount to actionable extreme and outrageous conduct. Courts have found racial slurs and epithets sufficient to constitute outrageous conduct for IIED. *See Robinson v. Hewlett-Packard Corp.*, 183 Cal. App. 3d 1108, 1129-30 (1986) (finding summary judgment on IIED claim inappropriate because use of racial slurs may constitute outrageous conduct); *Agarwal v. Johnson*, 25 Cal. 3d. 932, 947 (1979), *disapproved on other grounds by White v. Ultramar, Inc.*, 21 Cal. 4th 563 (1999) (evidence that a racial epithet was used against and humiliated an employee was enough to support a finding of outrageousness). But the Freemans do not allege that the head nurse or any other defendants used racial slurs or epithets. Merely rude or insensitive behavior does not rise to the level of extreme and outrageous conduct required for intentional infliction of emotional distress. *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (finding a supervisor who yelled and screamed at an employee amounts to rude and insensitive acts but not outrageous conduct).

Furthermore, the Freemans do not sufficiently allege severe or extreme emotional distress *as a result* of the head nurse's actions. Although I draw all reasonable inferences and resolve all doubt in the Freemans' favor, I am not required to accept as true allegations that are unwarranted deductions of fact or unreasonable inferences. *Usher*, 828 F.2d at 561; *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. It is unreasonable to infer that Mr. Freeman suffered loose bowels, a cut ileum, excessive flatulence, nonexistent sexual life, and could no longer work from severe emotional distress allegedly inflicted by the head nurse's actions, rather than from the alleged complications of his aortic valve repair. Accordingly, I DISMISS this claim with leave to amend.

## II. BIVENS CLAIMS

The Freemans assert a *Bivens* cause of action for violations of their First and Fifth Amendment rights against all defendants. FAC at 12. The United States argues that sovereign immunity bars *Bivens* claims against the United States, the VA Medical Center, and the individual defendants named in their official capacity. Def.'s Mot. 12. The Freemans clarify in their opposition that their *Bivens* claim is against the individual defendants named in their individual capacity. Opp'n 21.

As I noted in a prior order, a *Bivens* action for violations of constitutional rights cannot be asserted against the United States. Dkt. No. 34 at 4. Nor can it be asserted against the VA Medical Center or individual defendants named in their official capacity. *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) ("A *Bivens* action seeks to hold federal officers individually liable for constitutional violations."). Accordingly, the Freemans' *Bivens* action against the United States and the VA Medical Center are DISMISSED WITH PREJUDICE.

The Freemans are allowed to amend their complaint to include a *Bivens* action against named individuals, in their individual capacity, who are responsible for the alleged constitutional violations. If the Freemans file an amended complaint, they must explain the basis for their claims and allege specific facts explaining how each individual defendant violated their constitutional rights. To bring a claim based on the First Amendment, the Freemans must also allege that a defendant "took action that would chill or silence a person of ordinary firmness from future First Amendment activities." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)

11

1  (internal quote and citation omitted).  Moreover, the Freemans must allege, and eventually prove,
2  that a defendant's "desire to cause the chilling effect was a but-for cause of the defendant's
3  action."  *Id*. at 1232; *see also Mendocino Envtl. Ctr. v. Mendocino Cty*., 14 F.3d 457, 464 (9th Cir.
4  1994) ("The defendant's intent is an element of the claim."); *Gibson v. United States*, 781 F.2d
5  1334, 1342 (9th Cir. 1987) (holding that plaintiffs may bring a *Bivens* claim under the First
6  Amendment where plaintiffs allege that defendants acted with the impermissible motive of
7  curbing protected speech).

## III. UNRUH ACT

The United States argues that the claim for violations of California's Unruh Act should be dismissed for failure to allege facts that defendants discriminated against the Freemans.  Def.'s Mot. 14.  Section 51 provides that "all persons" are "entitled to the full and equal accommodations advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  CAL. CIV. CODE § 51.  As the Ninth Circuit noted, "The Unruh Act forbids business establishments to deny any person 'full and equal accommodations, advantages, facilities, privileges, or services' on account of race, and has been limited to cases 'where the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor relationship.'"  *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (quoting *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 873–74 (9th Cir.1996)).  To establish a violation of the Unruh Act that is independent of a claim under the Americans with Disabilities Act, a plaintiff must "plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."  *Munson v. Del Taco, Inc*., 46 Cal. 4th 661 (2009) (internal quotation marks omitted).  The California Supreme Court has clarified that the Unruh Act requires allegations of a defendant's "willful, affirmative misconduct."  *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 2014 U.S. App. LEXIS 2492 (9th Cir. Feb. 5, 2014); *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824 (2005).

The Freemans allege that Mr. Freeman did not "observe [] any white veteran with an aortic valve repair in the Intensive Care Unit . . . dying from the possibility of sepsis poisoning," did not witness any medical staff "apologizing to white patrons . . . for a botched surgery," "did not notice

12

any white veterans being transferred from the [ICU] in excruciating pain," and "did not witness nor notice any white veterans waiting 10 to 14 hours for medical treatment or being in excruciating pain for six days." FAC at 13-14. The Freemans allege that the head nurse "tried to inflict extreme emotional distress on [the Freemans], causing Mr. Freeman to shake uncontrollably. FAC at 15. The Freemans further allege that the head nurse moved Mr. Freeman in a room near an exit and shouted at Mrs. Freeman to leave the room, that Mr. Freeman "did[] [not] witness any white veterans at SFVA put out of their assigned rooms and placed near the exit," that "no one yelled at [a moaning white veteran]," that Mr. Freeman did not witness a white veteran's spouse put out of the room. FAC at 15-16.

Aside from allegations stemming from events at the San Francisco VA Medical Center, the Freemans also allege "segregative practices at the Oakland VA clinic." FAC at 16. They allege that the Oakland VA clinic's physical therapist, Ms. Kelly, is racist and that "[w]hite veterans were allowed to use the equipment but Mr. Freeman was advised to 'walk around Lake Merritt' using his walker, due to his limited mobility." FAC at 16-17.

Construing the pleadings liberally and drawing all reasonable inferences in favor of the Freemans, these allegations still do not amount to "affirmative willful misconduct" of racial discrimination by the defendants. The Freemans have alleged that the head nurse was cruel and that Mr. Freeman did not use the equipment at the Oakland VA clinic due to his limited mobility. However, there are no factual allegations that show that racial discrimination motivated the actions of the head nurse or other defendants. Therefore, the Freemans fail to show how the medical staff's treatment of Mr. Freeman amounts to willful, affirmative racial discrimination. I previously gave Mr. Freeman leave to amend his Unruh Civil Rights Act claim "to describe specifically the basis for his contention that defendants discriminated against him because of his race when they performed his aortic valve repair surgery." Dkt. No. 34 at 7. Although Mr. Freeman has failed to do so, in light of his pro se status, this claim is DISMISSED with leave to amend.

**IV. THE FREEMANS' MOTION TO STRIKE**

The Freemans move to strike the exhibits attached to the declaration of Sonia Dunk in

13

support of the motion to dismiss. Opp'n 11. A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (citation omitted). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp. 2d 1048, 1057 (N.D. Cal. 2004).

The Freemans object that the exhibits are hearsay, unreliable, and violate the right of confrontation. Opp'n 11. However, the exhibits are relevant at this juncture to show that Mr. Freeman exhausted his administrative remedies and can properly assert a FTCA cause of action in federal court. At this point, I have not considered, and need not consider, the Veterans Administration's determinations on Mr. Freeman's claim. Therefore, the Motion to Strike is DENIED.

## CONCLUSION

For the reasons above, I DENY the Motion to Strike, DENY plaintiffs' request to render a default judgment, and GRANT the motion to dismiss.

**The following claims are DISMISSED WITH PREJUDICE:**

(i) Mrs. Freeman's FTCA claims for loss of consortium, negligence, medical malpractice, and intentional infliction of emotional distress;

(ii) the FTCA claims against the VA Medical Center, unnamed and named individual defendants; and

(iii) the *Bivens* claim against the United States and the VA Medical Center.

**The following claims are DISMISSED WITH LEAVE TO AMEND:**

(i) Mr. Freeman's FTCA claims for negligence, medical malpractice, and intentional

infliction of emotional distress;

(ii) a *Bivens* action for alleged constitutional violations against specifically named individual defendants in their individual capacity; and

(iii) a claim for violation of Section 51 of the Unruh Act.

An amended complaint, if any, shall be filed within **twenty (20)** days of the date of this Order. Mr. Freeman is advised to allege specific facts in support of his claims for relief. His complaint has been dismissed twice, and the Court is unlikely to allow leave to amend a third time. He is also advised that if he names individual defendants, he must properly serve them.

Finally, Mr. Freeman is again advised to contact the Legal Help Center, located on the 15th floor, Room 2796, of the courthouse at 450 Golden Gate Avenue, San Francisco, California, 94102 if he has any questions about how to proceed with this case.

**IT IS SO ORDERED**.

Dated: March 19, 2014

_____
WILLIAM H. ORRICK
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELBORN FREEMAN,<br><br>              Plaintiff,<br><br>  v.<br><br>UNITED STATES et al,<br><br>              Defendant. | Case Number: CV13-02421 WHO<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 19, 2014, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the persons hereinafter listed, by depositing said envelope in the U.S. Mail.

Welborn Freeman and
Deborah Freeman
276 Lee Street #101
Oakland, CA 94610

Dated: March 19, 2014

Richard W. Wieking, Clerk
    By: Jean Davis, Deputy Clerk